Freddie PARRADO, a/k/a "Gilbert Mercado," Petitioner,

v.

UNITED STATES of America, Respondent.

Nos. 01 Civ. 2892(PKL), S2 96 Cr.505(PKL).

United States District Court, S.D. New York.

June 24, 2002.

Freddie Parrado, White Deer, PA, pro se.

Robert B. Buehler, Assistant United States Attorney for the Southern District of New York, New York City, for Respondent.

### OPINION AND ORDER

LEISURE, District Judge.

Petitioner Freddie Parrado, acting *pro se*, moves for a reduction of his sentence pursuant to 28 U.S.C. § 2255. In the alternative Parrado claims that his guilty plea was neither knowingly nor voluntarily entered. For the following reasons, Parrado's petition is denied.

### BACKGROUND

**A. Factual and Procedural History**

On July 17, 1996, the Grand Jury filed an indictment, charging Parrado with distributing and possessing with intent to distribute five kilograms and more of mixtures and substances containing a detectable amount of cocaine in violation of 21 U.S.C. § 846. Thereafter, Parrado waived formal indictment, and on July 2, 1997, the government issued a superceding information S2 96 Cr. 505(PKL) (the "Information") charging him with the same violation of 21 U.S.C. § 846.

On June 30, 1997, Parrado entered into a plea agreement with the government. *See* Plea Agreement of Freddie Parrado, June 30, 1997 (the "Plea Agreement"). The plea agreement stipulated that he distributed and possessed with intent to distribute at least 15 but less than 50 kilograms of cocaine. *See* Plea Agreement at 2. Further, the plea agreement established that his base offense level was 34 under the Federal Sentencing Guidelines (the "Sentencing Guidelines"). *See id.* Due to Parrado's cooperation, however, the parties stipulated to reducing the base offense level to 31. *See id.* at 2–3. His criminal history included seven points and a rating of IV under the Sentencing Guidelines. *See id.* at 3. The parties stipulated that his sentencing range was 151 to 188 months. *See id.* at 4.

On July 2, 1997, Parrado pleaded guilty to the violation of 21 U.S.C. § 846, before The Honorable John F. Keenan, United States District Judge in this Court. *See* Parrado's Plea Allocution, July 2, 1997 (the "Plea Allocution"), at 15. On February 4, 1998, I sentenced Parrado to 151 months in prison. *See* Transcript of Parrado's Sentencing, February 4, 1998 (the "Sentencing Transcript"), at 9. During the plea allocution Judge Keenan fully complied with the requirements of Rule 11(c) of the Federal Rules of Criminal Procedure then construed by the courts. In this regard, Judge Keenan carefully discussed with the defendant the veracity of his guilty plea, and inquired as to whether Parrado understood the charges against him. *See* Plea Allocution at 4 and 7. Judge Keenan also explained the possible sentencing range Parrado faced, detailed the terms of a mandatory supervised release and explained that the sentencing judge may de-

part from the Sentencing Guidelines. *See id.* at 10. Next, Judge Keenan inquired, "Are you offering a plea of guilty of your own free will?" Parrado answered, "Yes." *See id.* at 14. Judge Keenan specifically inquired whether Parrado understood the terms of the plea agreement, to which Parrado responded affirmatively. *See id.* at 13.

### B. Petitioner's Claims

Parrado claims that his sentence is invalid under the new rule of *Apprendi v. New Jersey* because the judge rather than the jury determined the quantity of narcotics involved. *See* 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000). Parrado also attempts to rely on *Jones v. United States,* 530 U.S. 1271, 120 S.Ct. 2739, 147 L.Ed.2d 1002 (2000). *See* Parrado's Reply to The Government's Memorandum In Opposition to Parrado's § 2255 Motion ("Parrado's Reply"). Further, Parrado asserts that he pleaded guilty and was "convicted of 5 kilos; not the 15 to 50 that he was sentenced for." Parrado's Reply at 7. In the alternative, petitioner alleges that his guilty plea was not voluntary or knowing. *See id.* at 4.

### DISCUSSION

### I. Timeliness of the Petition

Section 2255 sets forth the following time restrictions:

A 1–year period of limitation shall apply to a motion under this section. The limitation period shall run from the latest of:

(1) the date on which the judgment of conviction becomes final;

(2) the date on which the impediment of making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was pre-

vented from making a motion by such governmental action;

(3) the dates on which the right asserted was initially recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255.

Parrado initiated his claim more than 3 years after the conclusion of the case. Judgment was entered on February 5, 1998, and Parrado filed his Section 2255 motion on March 10, 2001. Thus, Parrado fails to meet the time restriction of Section 2255(1).

Parrado attempts to take advantage of Section 2255(3). He claims the "new rule" of *Apprendi* provides the relief he seeks and was issued less than one year prior to filing his motion. Section 2255 clearly announces, however, that the right recognized must be applicable retroactively to be used as a weapon for a collateral attack, and thus, as detailed below, because *Apprendi* is not retroactively applicable, Parrado can not take advantage of the *Apprendi* decision in the instant motion.

### II. The Retroactivity of *Apprendi*

The Second Circuit recently heard arguments regarding the retroactivity of *Apprendi,* but has not yet rendered its decision. *See Beatty v. United States,* 293 F.3d 627, 631 n. 3 (2d Cir.2002) (citing *United States v. Luciano (Parise),* No. 01–1198 (2d Cir. argued Jan. 28, 2002)). The Supreme Court also has not ruled on this issue.

The *Apprendi* Court held that, "[o]ther than the fact of a prior conviction,

any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 530 U.S. at 490, 120 S.Ct. 2348. The issue of retroactivity turns on whether the rule is considered procedural or substantive. While substantive rules are automatically applied retroactively, holdings dictating methods of criminal procedure, such as the *Apprendi* holding, are presumptively non-retroactive. *See Rosario v. United States,* No. 00 Civ. 9695, 2001 WL 1006641, at *2 (S.D.N.Y. Aug.30, 2001); *Teague v. Lane,* 489 U.S. 288, 310, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989); *see also Bousley v. United States,* 523 U.S. 614, 619–20, 118 S.Ct. 1604, 140 L.Ed.2d 828 (1998) (holding that procedural rules are presumptively non-retroactive). A majority of the courts that have considered *Apprendi's* retroactivity have presumed the rule to be procedural. *See e.g., United States v. Sanders,* 247 F.3d 139, 147 (4th Cir.2001) (holding the language of *Apprendi* dictates that rule is procedural); *Raulston v. Menifee,* No. 01 Civ. 0406, 2002 WL 826810, at *4 (S.D.N.Y. Apr.30, 2002) (concluding that the rule of *Apprendi* is procedural). Indeed, the language of the *Apprendi* Court strongly suggests that the rule at issue is procedural. "The substantive basis for New Jersey's enhancement is thus not an issue; the adequacy of New Jersey's procedure is." *Apprendi,* 530 U.S. at 475, 120 S.Ct. 2348. This Court is persuaded by the weight of authority and the language set forth in *Apprendi* itself, and thus holds that the rule is procedural.

A decision affecting criminal procedure becomes retroactive for the purpose of collateral review in one of two ways. The Supreme Court designates the rule as retroactive, or the rule satisfies an exception set forth in *Teague.* 489 U.S. at 311, 109

S.Ct. 1060; *see Tyler v. Cain,* 533 U.S. 656, 665, 121 S.Ct. 2478, 150 L.Ed.2d 632 (2001).

The first *Teague* exception states, "that a new rule should be applied retroactively if it places 'certain kinds of primary, private individual conduct beyond the power of the criminal law.'" 489 U.S. at 311, 109 S.Ct. 1060 (citations omitted). The second exception is for procedural rules that are "implicit in the concept of ordered liberty," *id.* (citation omitted), or "watershed rules of criminal procedure implicating the fundamental fairness and accuracy of the criminal proceeding." *Tyler,* 533 U.S. at 665, 121 S.Ct. 2478 (quoting *Graham v. Collins,* 506 U.S. 461, 478, 113 S.Ct. 892, 122 L.Ed.2d 260 (1993)).

The Supreme Court has not made the new rule announced in *Apprendi* retroactive. *See Forbes v. United States,* 262 F.3d 143, 145 (2d Cir.2001) (per curiam). Moreover, Courts in the Southern District of New York have largely held that the *Apprendi* holding does not fit either of the two exceptions set forth in *Teague,* and therefore is not retroactively applicable on collateral review. *See Raulston,* 2002 WL 826810, at *4 (holding that *Apprendi* does not apply on collateral review); *Fiumara v. United States,* 198 F.Supp.2d 427, 431 & n. 5 (S.D.N.Y. Apr.3, 2002) (Sprizzo, J.) (same); *Saldarriaga v. United States,* No. 99 Civ. 4487, 2002 WL 449651, at *5 (S.D.N.Y. Mar.21, 2002) (same); *Garcia v. United States,* No. 01 Civ. 7188, 2002 WL 42888, at *1 (S.D.N.Y. Jan.11, 2002) (same). *But see Rosario,* 2001 WL 1006641, at *2 (ruling that *Apprendi* is substantive in nature and therefore retroactive). Though the Second Circuit has not specifically considered the issue,[1] the Fourth, Eighth, Ninth, and Eleventh Circuits have all ruled that *Apprendi* does not

---

**1.** Although the Second Circuit has not explicitly addressed the retroactivity of *Apprendi* on

initial Section 2255 petitions, the Second Circuit did in a per curiam decision hold that

apply retroactively on collateral review. *See, e.g., Sanders,* 247 F.3d at 147–51 (holding that the *Apprendi* decision is not applicable on collateral review); *United States v. Moss,* 252 F.3d 993, 997 (8th Cir.2001) (same); *Jones v. Smith,* 231 F.3d 1227, 1238 (9th Cir.2000) (same); *McCoy v. United States,* 266 F.3d 1245, 1257–58 (11th Cir.2001) (same).

The majority of courts that have considered the issue have ruled *Apprendi* is not retroactive under the first exception, because *Apprendi* does not place any behavior outside the scope of the criminal law. *See Sanders,* 247 F.3d at 148; *Raulston,* 2002 WL 826810, at *4. The second exception also does not apply. Designation as a "watershed" rule or a procedural rule that "is implicit in the concept of ordered liberty" is rare. *United States v. Mandanici,* 205 F.3d 519, 529 (2d Cir.2000), *cert. denied,* 531 U.S. 879, 121 S.Ct. 190, 148 L.Ed.2d 132 (2000). A rule is considered a watershed rule when the failure to adopt it will increase the risk of an innocent defendant being convicted or the rule "alter[s] our understanding of the bedrock of procedural elements" that are essential to a fair trial. *Teague,* 489 U.S. at 311, 109 S.Ct. 1060. As the government argues in the instant action, absence of the rule set out in *Apprendi* does not threaten the fundamental fairness of trial or create a risk that an innocent party will be convicted. *See* The Government's Memorandum In Opposition to Parrado's § 2255 Motion at 17. To the contrary, *Apprendi* places the burden of determining elements that lead to sentence enhancement on the jury rather than the judge. 530 U.S. at 490, 120 S.Ct. 2348.

In *Bilzerian v. United States,* the Second Circuit held that shifting an element of proof from the judge to the jury did not constitute a watershed rule, and therefore was not applicable on collateral review. 127 F.3d 237, 241 (2d Cir.1997) (McLaughlin, J.) (holding that juries will likely not have substantially different interpretations than judges). Accordingly, the rule set forth in *Apprendi,* which does no more than shift the proof of drug quantity from the judge to the jury, does not meet either of the *Teague* exceptions, and therefore is not retroactively available for collateral attack in the instant motion.

Parrado attempts to circumvent this proposition by arguing in the alternative that the ruling of *Jones v. United States,* 530 U.S. 1271, 120 S.Ct. 2739, 147 L.Ed.2d 1002 (2000), is retroactively applicable on collateral attack, thus making his instant Section 2255 motion timely. The Court in *Jones* remanded the case so that the Tenth Circuit could apply the new holding set forth by *Apprendi.* In *United States v. Jones[II],* 235 F.3d 1231 (10th Cir.2000), the Tenth Circuit simply applied the rule set forth in *Apprendi.*

Parrado's *Jones* argument fails for two reasons. First, the holding of *Jones[II]* is not a new right recognized by the Supreme Court.[2] Second, there is no reason to believe that a subsequent ruling applying *Apprendi's* holding would be retroactive, when *Apprendi* is not.

### III. Application of *Apprendi* to Parrado's Case

◼ Even if the *Apprendi* holding applied on collateral review, Parrado's appeal

---

*Apprendi* does not apply retroactively to successive Section 2255 petitions. *See Forbes,* 262 F.3d at 145. The petitioner in *Forbes* argued that the *Apprendi* ruling fit within the *Teague* exceptions and was therefore retroactive, but the Second Circuit rejected this argument. *See id.* at 145.

2. Section 2255(3) applies only to rules that are newly recognized by the Supreme Court. *See* 28 U.S.C. § 2255. The holding in *Jones[II]* is neither new, nor a Supreme Court ruling.

would still fail, because *Apprendi* does not apply to the instant situation. *Apprendi* is applicable only when a judge decides an element of the crime that would lead to an enhanced sentence. *See e.g., United States v. Norris,* 281 F.3d 357, 361 (2d Cir.2002) (Newman, J.); *United States v. Guevara,* 277 F.3d 111, 118 (2d Cir.2001); *United States v. Thomas,* 274 F.3d 655, 663 (2d Cir.2001). *Guevara* holds that a sentence is erroneous when a judge determines a drug quantity that exposes the defendant to a minimum sentence exceeding the top of the Sentencing Guidelines range that would have been applicable absent the judge's finding. 277 F.3d at 119. In *Norris,* the Second Circuit clarified that at the other end of the sentencing spectrum, *Apprendi* only applies to situations where a judicial determination enhances a sentence beyond the statutory maximum. *Id.* at 360; *see also Thomas,* 274 F.3d at 663 (ruling that *Apprendi* is applicable only when a judicial determination enhances a sentence above the statutory maximum that would have controlled absent such a determination). Thus, *Apprendi* is not applicable to a judicial fact finding that leads to Sentencing Guideline enhancements that remain under the statutory maximum. *See Norris,* 281 F.3d at 361.

Parrado fails to prove that his sentence was enhanced or that a judge determined the drug quantity. Parrado was informed that he was charged with conspiracy to violate 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A), which constitutes distributing and possessing with intent to distribute 5 kilograms or more of cocaine. Further, Parrado pleaded guilty to this crime and stipulated to the elements of the crime,

including that he had distributed and possessed with intent to distribute at least 15 but less than 50 kilograms of cocaine.

▮▮▮ The fact that Parrado distributed and intended to possess at least 15 but less than 50 kilograms was not explicitly charged in the Information, which simply charged Parrado with intent to distribute 5 and more kilograms of cocaine. The Supreme Court has held that the indictment must charge any fact that enhances the sentence. *United States v. Cotton,* —— U.S. ——, 122 S.Ct. 1781, 1783, 152 L.Ed.2d 860 (2002) (citing *Apprendi,* 530 U.S. at 476, 120 S.Ct. 2348). *Cotton,* however, only requires that the indictment charge a threshold level that includes within it the sentence that the defendant received. *Id.,* 122 S.Ct. at 1786 n. 3. In the present case the Information charges "5 kilograms and more," which carries a maximum penalty of life imprisonment under the statutory guidelines of 21 U.S.C. § 841(b)(1)(A). *See* Information at 1. Thus, the Information charges the threshold level of the sentence that Parrado received. Moreover, Parrado's failure to allege the Information was defective at the time of his trial waives any right that he had to challenge the Information. *See id.,* 122 S.Ct. at 1787 (holding that a failure to object to the error in the indictment at trial waives a right to challenge the indictment at a latter stage in the proceedings).[3]

Finally, the judge did not determine the drug quantity—Parrado himself determined the quantity in his plea agreement. *See* Plea Agreement at 2. Therefore, the very principle upon which *Apprendi* is based is absent, because there was no judicial determination of drug quantity.

▮▮▮ Assuming arguendo that the judge had determined drug quantity, Parrado's

---

**3.** Not only did Parrado not object to the quantity stated in the Information, he stipulated to the amount of at least 15 but less than 50

kilograms of cocaine, the Sentencing Guideline range for which he was sentenced. *See* Plea Agreement at 2.

claim still fails because he was not subject to a sentence enhancement under the most liberal construction of either *Guevara* or *Norris.* Parrado alleges he should have been sentenced to distributing and possessing with intent to distribute 5 kilograms of cocaine. Under *Guevara, Apprendi* remains inapplicable because the statutory minimum is the same for a sentence based on 15 to 50 kilograms and a sentence based on 5 kilograms. *See* 21 U.S.C. § 841(b)(1)(A). Therefore, it does not enhance the statutory minimum beyond the Sentencing Guidelines range that would have been applicable. *Apprendi* remains inapplicable under *Norris* because Parrado was sentenced to 151 months in prison, which is within the statutory range of a minimum penalty of 120 months and a maximum of life imprisonment. *See id.* Thus, *Apprendi* is not applicable because Parrado's sentence has not been enhanced under either of the standards set forth in *Norris* or *Guevara.*

## IV.  Parrado's Plea Agreement

### A.  Parrado's Contention that the Plea was neither Knowing nor Voluntary

██  Parrado contends that his guilty plea was not voluntarily or knowingly entered because of an intervening change in law. *See* Parrado's Reply at 7. He seeks to rely on the authority of *Salas v. United States,* which holds that a defendant may argue that his plea was not knowing or voluntary when an intervening change in law occurs. 139 F.3d 322, 324–25 (2d Cir. 1998). The facts stipulated in the plea agreement, however, are binding, and the petitioner is only allowed to contest whether the stipulated facts constitute a crime in light of the change in law. *See id.* Because *Apprendi* and *Jones* dictate that the quantity of narcotics is an element to be decided by the jury, and because Parrado's guilty plea is the equivalent of a jury decision on quantity, the change in law has no affect on the instant situation. *See Libretti v. United States,* 516 U.S. 29, 38, 116 S.Ct. 356, 133 L.Ed.2d 271 (1995) (holding that entering a guilty plea is an admission of guilt and a waiver of the right to jury trial).

Further, Parrado's guilty plea was knowingly and voluntarily entered because there was no error in the "Court Advice" delivered at his plea allocution. *See United States v. Vonn,* —— U.S. ——, 122 S.Ct. 1043, 1046, 152 L.Ed.2d 90 (2002) (ruling that Rule 11 is used to ensure the knowing and voluntary nature of a plea); *United States v. Maher,* 108 F.3d 1513, 1520 (2d Cir.1997) (quoting *United States v. Parkins,* 25 F.3d 114, 117 (2d Cir.1994)) (holding that the district court must strictly comply with Rule 11 so that it can be determined whether the plea is knowingly and voluntarily entered). Although Parrado has made no other complaint regarding the voluntariness of his plea other than the above discussed grounds, a review of the transcript of Parrado's plea allocution in its entirety shows beyond peradventure that it was voluntarily and willingly made. "Before accepting a plea of guilty ... the court must address the defendant personally in open court and inform the defendant of, and determine that the defendant understands" the charges before him, as well as, his constitutional rights. Fed. R.Crim.P. 11(c). Judge Keenan carefully covered with the defendant every aspect of Rule 11 applicable at the time of sentencing. *See* Plea Allocution at 3–14. Therefore, Parrado's plea was both knowingly and voluntarily entered.

### B.  The Plea Agreement's Prohibition of Appeals

██  Parrado's plea agreement states that Parrado would "neither appeal, nor otherwise litigate under 28 U.S.C. § 2255, any sentence within or below the stipulated Guidelines range." Plea Agreement at 5. So long as, Parrado's plea was know-

ing and voluntary he cannot bring the instant appeal, because it would violate his plea agreement. Indeed, a defendant may waive his or her right to appeal through a plea agreement. As the Second Circuit explained in *United States v. Salcido–Contreras:*

> [i]n no circumstance, however, may a defendant, who has secured the benefits of a plea agreement and knowingly and voluntarily waived the right to appeal a certain sentence, then appeal the merits of a sentence conforming to the agreement. Such a remedy would render the plea bargaining process and the resulting agreement meaningless.

990 F.2d 51, 53 (2d Cir.) (per curiam), *cert. denied,* 509 U.S. 931, 113 S.Ct. 3060, 125 L.Ed.2d 742 (1993); *see also Santobello v. New York,* 404 U.S. 257, 260–62, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971) (holding that a voluntary and knowing plea agreement is equivalent to a contract and the promises stated within must be fulfilled by the parties). Parrado knowingly and voluntarily waived his right to appeal. The record is clear that Judge Keenan complied with Rule 11.[4] The case law at the time held that a defendant must knowingly and voluntarily waive their right to appeal. "[A] waiver of the right to appeal should only be enforced by an appellate court if the record 'clearly demonstrates' that the waiver was both knowing ... and voluntary." *United States v. Ready,* 82 F.3d 551, 557 (2d Cir.1996) (citations omitted). Judge Keenan questioned, "Do you remember that the terms of the plea agreement were read to you by an interpreter ... ?" Plea Allocution at 13. Parrado answered that he did. *See id.* Moreover, Judge Keenan asked, "And were the terms of the plea agreement explained to you and do you understand them?" *Id.* Again Par-

rado answered, "Yes." *Id.* Thus, it is clear from the record that Parrado understood the consequences of pleading guilty and knowingly and voluntarily waived his right to an appeal. In any event, the issue is moot because as detailed above, Parrado's opportunity to appeal has lapsed due the fact that the *Apprendi* ruling is not retroactively applicable.

## CONCLUSION

For the foregoing reasons, Parrado's petition to reduce his sentence pursuant to 28 U.S.C. § 2255 is HEREBY DENIED. **SO ORDERED.**

---

4. Rule 11 of the Federal Rules of Criminal Procedure was amended on December 1, 1999 to include Rule 11(c)(6). 11(c)(6) re-quires that the court inform the defendant in open court of any terms that waive a right to appeal. *See* Fed.R.Crim.P.